We'll hear argument next in Case 09-834, Kasten v. Saint-Gobain Performance Plastics Corporation. Mr. Kaster. Thank you, Mr. Chief Justice, and may it please the Court. When Kevin Kasten told his employer that the location of the time clocks was illegal and that if they were taken to court they would lose, he filed any complaint within the meaning of Section 215A.3 of the Fair Labor Standards Act because filing includes an oral communication, because any means any, which includes formal, informal, written, or unwritten communications. And the words in the statute were designed to have a broad construction under Section 2 of the statute, 202, and under Mitchell v. DiMario in the Tennessee Coal case. I'd like to begin with the Tennessee Coal case, Tennessee Coal v. Moscata. The Court interpreted work in a broad fashion to include the time in a mine when workers were moving from one place to another, not actually engaged in physical labor. In interpreting work that way, the Court said that the act is not to be interpreted in a narrow, grudging fashion. What I'd like to focus on is the fact that there's a lot of work to be done in a narrow, grudging fashion. And let's say they say you can make this complaint in writing, you can make it orally. Now, there's some things going on in the workplace, and a supervisor happens to be walking by, maybe a machine is broken, an employee has been hurt, and an employee walks up to the supervisor who's walking briskly by, taps the supervisor on the shoulder and says, the company's violating the Fair Labor Standards Act because of the placement of the clock. You said that filing has no formality requirement. Would that be the filing of a complaint? I think it would, Your Honor. I don't think that the fact that the employer has a policy that says you do it on a Tuesday morning would control what the statute says, one way or the other. So I think it would constitute a filing of a complaint. Sotomayor So you mean that if the government says you've got to file a complaint with us by either calling us or submitting something in writing, and at a cocktail party, a worker goes up to a government employee in that agency and says, you know my company's violating the law, that that's enough? I don't, you know, I don't believe that that's, in the context of a non-work environment, Your Honor, I would note that I don't know exactly the answer to the Court's question. Sotomayor The reason I'm asking that question is related to Justice Alito's question, which is, what does filing a complaint mean? Does it have to be relative to the procedures adopted by the person that you're reporting this to? Filing means directing it to somebody who can do something about it, and it doesn't necessarily have to be. Sotomayor Well, what's it like at a cocktail party? That employee might be there on personal time, but when he goes back to work the next morning, he could do something. Is that enough? Well, it may be. If it's directed towards the responsible party, then it would be filing a complaint. And so it could occur outside of work time. Sotomayor So what you're doing is stopping the government from saying the only way that you can file a complaint with us is to do it in writing. We're now forcing the government to adopt an oral procedure, even if it chose not to, even if it thought an oral procedure would create havoc, et cetera, et cetera. If the person is directing the complaint to the government and communicates that to the responsible party who can do something about it, I think that they are filing a complaint, Your Honor. Now ---- Alito It's one thing to say that filing doesn't necessarily mean that something is written, although that's usually what the word means, isn't it? Sotomayor It can often mean a written communication. Alito Are you filing your comments right now? Sotomayor I think I am, Your Honor. I'm directing them to the court. Alito That's the ordinary usage of the word. But to say that it includes no degree of formality, that's your argument? Sotomayor Well, Your Honor, I would say there are no formal requirements for the filing. I would note them if they're not. Alito If that's the law, an employee gets fired and the employee says, well, this was done in retaliation for my having filed an FLSA complaint three weeks ago. The employer says, what complaint? We have no record of any such complaint. The employee says, oh, yeah, I said it orally to a supervisor who was passing by, and my buddy Joe is there and he can he's going to corroborate this. So now we have a trial about whether a complaint was filed? Sotomayor You might have a trial, Your Honor, depending on the circumstances. There might be one. The thing is that that's no different from any other retaliation case. They're trying to establish an exception to the rule that retaliation occurs in verbal forms. The communication, the underlying protected conduct occurs in verbal forms all the time. They're trying to establish the exception here. And I would note that even under the National Labor Relations Act in Scrivener, filing charges includes the verbal communications that are the antecedents, the predicates to filing the charge. Roberts With whom? Sotomayor With the responsible party who can do something about it. I would note also, Your Honors, that Kevin Kasten doesn't have an office. In terms of the formality of the communication, there's a discussion about the fact that this occurred in the hallway outside of the place where they walked in and out of the factory. He doesn't have an office. That's where he communicates with people. Breyer Why do you feel the need to go beyond, say, what the AFL-CIO identifies as a normal oral filing? Breyer They use language like the initial stage of the grievance procedure. There is confrontation with an eye to fact-finding. I'm adding a little. The dispute is joined when the employee or the steward and the supervisor come face to face to identify, to discuss, and hopefully to resolve a problem. Now, that's a formal kind of relationship. It doesn't involve a cocktail party. And yet it is done orally. And there is a tradition as to how that works. But from what you've said, I gather that you want to go well beyond that and provide the cocktail party, perhaps not cocktail parties, but just a tap on the shoulder, would be sufficient. Where I take it, that would normally not be sufficient in the grievance process. Well, the grievance process is, Your Honor, the grievance process is a formal process. And so I wouldn't compare the average workplace to that. Breyer I suppose I think that that provides a good precedent for oral filings. What happens then? What am I supposed to do in your case? Fisher Your Honor, in the general proposition, we would be accepting of the Scrivener rule that the Court adopted in the 70s, that is, that the filing of a charge includes those things that happened orally prior to and around the time of the filing of the charge. That's what this is about. Breyer You know, we're talking about a filing. In the grievance process, I don't want to repeat it, but it seems to me from having read the brief, filing takes place without writing, provided that there are these other safeguards which are described. Now, I want to know, in your opinion, is there a reason for not importing that into this system? I take it you'd win the case, or maybe you'd lose it. I don't know how it works on the facts. I don't know what the filing was here. Fisher In terms of the formality of the requirements, the Court may adopt formal requirements. The employer certainly did, and Mr. Kasten followed those. What I'm looking at are the words of the statute and how they're normally on the statute. Breyer And there's the word filing in the AALCIO statute as well. So I'm looking for a way of interpreting the one in light of the other. Do you favor that? Are you against that? If so, why or why? In terms of the procedure that they adopt, Your Honor, that may be an acceptable procedure. The thing that I'm looking at is the statutory language in saying that. Ginsburg And it wasn't, he didn't invoke the grievance procedure. In this case, he didn't invoke the grievance procedure. Fisher That's correct, Your Honor. Ginsburg So that would keep you out, if that were the test, that you have to formally invoke the grievance procedure. But we are told that every other time the word file is used in this Act, the Fair Labor Standards Act, it refers to a writing. And so you are urging a meaning that deviates from the standard meaning of the term in the very Act, that issue. Fisher I don't think I'm doing that, Your Honor, with all due respect. Ginsburg The provision where the word file is used to mean something other than a writing? Fisher It means, according to the first enforcement action back in 1961, it means submit or lodge, Your Honor. I would note that the defendant's own policies use it to describe a verbal communication. By protecting against retaliation for somebody who has filed a complaint for sexual harassment, they have used it in a manner that, as an example, to obviously include both written and verbal communications. I would note that there was a procedure in place here, Your Honor, that was the policy manual. This — there was no grievance procedure for Mr. Kasten. He did not have a grievance procedure. Scalia That's the problem. I mean, you can talk about a grievance procedure. I suppose there's always one in companies that are unionized, but an awful lot of companies aren't. Your — the Respondent is going to argue that this statute doesn't apply to private filings of complaints anyway, that it relates only to the filing of a complaint with the government. And that's a new point in this case, and normally I would not be disposed to consider it. My problem is I cannot decide on the question of whether filing means filing only in writing or also includes verbal filing without resolving that other question. That is to say, if indeed the complaint has to be, quote, filed with the government, I'm inclined to think that an oral complaint pursuant to procedures established by the agency which permit an oral complaint, even a complaint by telephone, would be okay. But my goodness, if it applies to private employers as well, including employers that have no grievance procedures, including employers who have employees who go to cocktail parties, I am — I am very disinclined to think that it — that it can mean an oral complaint in that context. Well, Your Honor, I'm just looking at the statutory language. Filed any complaint. It's important that the word any has particular meaning. I would note that if — if — What does file — what's the meaning of file? It means to submit or lodge, Your Honor. So you're filing your argument right now? Now, come on. People don't talk like that. I think I — That is absurd. You are not filing an argument right now. Nobody uses the language that way. If I submit or lodge, that's the — and it's directed at a particular — I have to be asserting its statutory right. I'm not asserting. I'd like to go back to the question Justice Scalia filed just earlier. What would you say about his point that it seems to me has substantial merit? It's really our determination, our interpretation of what filing means might well depend on whether filing or a complaint includes intercompany complaints, the grumbling of an employee and so forth. And I recognize this argument comes up late. Has it been addressed in any of the other circuits? Yes, Your Honor. There's been a number of the circuits have interpreted this statute and included the Ninth Circuit, the First Circuit, the Tenth Circuit have all— All have said the intercompany complaints. Intercompany complaints. That is true as well in the Sixth Circuit. And it's easier to talk about the cases where that hasn't been true. In Memphis Barbecue, the Fourth Circuit, in Genesee Hospital, the Second Circuit, Memphis — the Memphis Barbecue case really addresses the testimonial clause. Genesee Hospital is the only case in the Second Circuit where they've held that all complaints need to go to the Department of Labor. The one thing I would say about that particular argument, Your Honor, is it makes superfluous instituted proceeding. It makes superfluous instituted proceeding, which are caused to be instituted. If you file a complaint, then with the Department of Labor, their argument is, and I think it's true, that you institute a proceeding. So the statute would be redundant and file any complaint would cover a null set. Scalia Well, I'm not sure that's true. You can complain orally to somebody at the Labor Department who decides that the complaint isn't serious enough to warrant commencing a proceeding. I mean, if you go in and insist, I, you know, I want to begin a proceeding, that's something else. But you can file a complaint orally without doing that, it seems to me. Well, Your Honor, I think if you have made the phone call and started the process, I think you have instituted the proceeding. Now, whether it gets at what stage of formality it gets to, I'm not sure, Your Honor. But I think you have begun the process of instituting proceeding or causing it to be instituted. That's one. The other thing that I would point out. Scalia Not if it's never instituted. Not if it's never instituted. If no proceeding is ever instituted, you can hardly be accused of having caused a proceeding to be instituted. So if you make an informal complaint and it doesn't go any further, and they ask, you know, do you want to start? No, I don't want to start a proceeding, but this company is just, you know, it's acting improperly. You guys ought to look into that. That's — I'm prepared to say that's filing a complaint if you're only talking about filing a complaint with the government. But if you're talking about oral filings of the complaints with the employer, I'm very troubled. Well, Your Honor, I'm going to reserve the rest of my time for rebuttal. Thank you. Thank you, counsel. Mr. Wall? Mr. Chief Justice, and may it please the Court, a number of the Court's questions are focusing on some of the practical difficulties here. And the government wants to start by pointing out there are a number of statutes, 20 or more, that have similar anti-retaliation provisions. Most of those statutes cover oral complaints, either because Congress has said so and administering agency has said so or courts have said so, and the kind of practical difficulties that the Court is raising have not proven unworkable under other statutory schemes. Respondent can't point to a single other statute addressing these kinds of — this has been narrowed, excuse me, to cover only oral complaints. Scalia's one of the oldest, though, isn't it? Yes. I mean, I think it's the very oldest, it may well be the very oldest. You're talking about a really old, foggy Congress that passed this thing. Justice Scalia, it's not the oldest. It was modeled on the NLRA, which is even older. And for instance, the NLRB has found that if, you know, employees are complaining to each other, that they can't be discharged under the NLRA's anti-retaliation provision, or if an employee orally says to his employer, I'm about to go to the board and tell them you're doing something unlawful, the board has said you can't be discharged. What is the language in those statutes? Do all those statutes use the language, file a complaint? The language in the NLRA is file charges or give testimony. So instead of filing a complaint, it says file charges. But the language in many of these statutes, and they're cited in all of the briefs, is extremely similar. They refer to filing complaints or charges, instituting proceedings, and as you pointed Are you urging that if you just tell a coworker that that's enough? I thought the whole idea is to give the employer notice that something is amiss. So how would telling a coworker serve that purpose? It wouldn't under this particular statute, Justice Ginsburg. I didn't mean to imply under the FLSA. The FLSA's anti-retaliation provision does not have an opposing any practice clause in the way that some civil rights statutes do, like Title VII. So it does require submission of a complaint to an employer, but that can take many forms. And as you pointed out, Justice Scalia, in this particular context, filing something orally makes perfect sense. We're not we're talking about the kinds of industries, truck drivers, coal miners, migrant workers, where that's a perfectly normal use of speech. Oral communication. Breyer, it's a perfectly normal use of speech. I accept that. But what is it that will surround this use of speech on a particular occasion with enough formality that we know it isn't something that would pass unnoticed and bring in a whole lot of things like the cocktail party example, et cetera? I noticed there was a paragraph in the AFL-CIO approach. That's why I brought it up. Is that the right standard? What we say here may take effect or have influence. So I want to say it correctly. What kinds of oral complaints count as filing a complaint? Justice Breyer, I don't think the government has any objection to that standard, although I do think that the government sees these statutes as a whole, so I would like the government's assistance on what words to write to be able to get this right. So it will not be too formal, it will not be too informal, it will do the job. And I think the kind of indicia of formality you're talking about are signs that the employer has submitted to his employer an assertion of statutory rights under the FLSA. I think those are the two things that the lower courts have consistently looked to. And I think those indicia of formality are a good sign that the employer has, but they're not the only sign. If I walk into the happy hour and I've actually written down on a form that my employer promulgates and I hand it off to my supervisor. Breyer, I'll fill in this blank then. There must be, surrounding the oral complaint, sufficient elements of formality such that. That the employer has indicated, the employee has indicated to his employer, someone in supervisory authority, that he is asserting statutory rights under the FLSA. So if he just says to the employer, you know, I think we ought to have a little more time to put on our gear. Is that an assertion of statutory rights under the FLSA? Mr. Chief Justice, I think that's a difficult question. I don't think it's presented here, because this isn't a content case. We're responding to the idea. No, I know, but the idea, one of the objections to your position is that it's going to be very hard to figure out in any particular case what is in filing an oral complaint under the FLSA, because, one, it's got to be reconstructed, unlike the situation where you have a government agency that's doing it, or you have a written complaint and, second of all, it's unclear, perhaps, for the employer to know that he's being charged with a violation of the FLSA. But that question comes up in every case, whether the complaint is written or oral to the government or an employer. If I write down on a form. No, if it's written, if it's written, you've got a document that people can look at, whether it's the NLRB or a court, that they can look and say, yes, this is an assertion of a violation. If I write down on a form promulgated by my employer, I don't like where the time blocks are, or I think it's on a form. So we've got that, that helps a lot. Also, an employer could have a notice, notice, if you really are upset because you think there is a violation going here, go to this microphone, which is directly connected to the complaint department, and cite the statute. That would work, too. But there have been years and years of, you've just said, of statutes like this. You say that many of them operate orally. All right. What kind of thing, if you can help, maybe you can't, which is dangerous, because then we just try to do our best and we don't have the labor law experience necessarily. But what is the form of words that we can use to separate the wheat from the chaff? Fisherman, I'm sorry if the formulation I'm giving you is not helpful, but in these other statutes, where either by express language or regulation, so for instance, the Circus Transportation Assistance Act, the ADEA or OSHA, the language varies from regulation to regulation, and some of them it says lodge complaint, and some it says make a complaint. But what the courts are looking for is that the other side can look, because in about two minutes you're going to hear, I suspect, the other side say, see, see, we told you. That's why you have to have it in writing. Again, and agencies have put these in writing. So at footnote 6 on page, I think it's 16 of the government's brief, we have the OSHA regulations, the STAA regulations appear at page, I think it's 21 of your brief. Alito, it would really be helpful if you could just give us the rule that you think should apply. It's the rule, Mr. Castor's argument seems to be anything goes, any oral communication to a supervisor. Let me go back to the example I started out with. A worker has been hurt. A supervisor is going to attend to the hurt worker, and an employee says, the company is violating the FLSA. And the supervisor says, don't tell me and don't tell me about it now, I'm doing something else. That's enough. I think the test, Justice Alito, is whether the employee has submitted a complaint to his employer that has put the employer on notice that that employee is asserting statutory rights under the FLSA, claiming that he is legally entitled to something he's not receiving. If the supervisor walks in the next morning and says to his boss, yesterday morning while I was attending to the plant accident, Joe told me that the time clocks were in the wrong place, he's about to file, I think we need to fire him, he's a troublemaker, that employee has stated a claim to the FLSA. Well, what if he goes to the boss and says, boss, you ought to do something, that railing is pretty dangerous over there? Again, Justice Roberts. Is the boss supposed to know, well, he's asserting statutory rights under the FLSA? Mr. Chief Justice, I think they're probably not. That would not be filing a complaint. I mean, I think as a content case, which this is not, it's unlikely that that is. Saying that you don't like something or you think it's unsafe is not actually saying that you're asserting a right to have it differently. But those are content cases. And here there's no question that Petitioner asserted his statutory rights to a number of different people at the company. What Respondent is saying is he didn't do it the right way. If he had done exactly what he did in exactly the same words, but he had done it some other way, then he'd be covered. So this is a form case. Ginsburg. What did he do specifically? I mean, you're saying that the employer has to know that he's making a complaint under the Act. So what you said here on the facts, that was clear that he did. If you credit his allegations, which you have to at this point because the district court granted summary judgment on a legal ground, what Petitioner says he did is he went to his supervisor, he said the time clock is in the wrong place, we're not getting paid for all of our time, and then he went up the ladder to the human resources personnel at the company, and he said exactly the same thing, and he said, I'm thinking about challenging you on it in court, and if I challenge you, you'll lose. Now, whatever the test is, that clearly meets the bar for asserting statutory rights under the FLSA. And I think what's important to note is that this Court has consistently, from the 1940s on, both with respect to the FLSA and anti-retaliation provisions more generally, in Title VII and other statutes, it has always given them a broad reading to effectuate their purposes. Roberts Mr. Wall, this is just a factual. Were you saying that the employee has to know that he's submitting a claim of statutory violation or the employer? Wall, I think what the lower courts have said, and I think this makes sense, is that the question is whether a reasonable, objective person would have understood the employee to have submitted a complaint. So if the employee does everything he can to put the employer on notice, it's not a defense for the employer to say that subjectively he didn't understand it to be a complaint. Kennedy In those circuits where they allow intercompany complaints that are oral, can you give me any sense of how often this leads to claims for retaliation? I mean, are there in the hundreds or just the? Wall, I can't, Justice Kennedy. All I can tell you is that the vast majority of circuits have found that intercompany  And it's not proven unworkable. Roberts Thank you, counsel. Wall, thank you. Roberts Mr. Phillips. Phillips Thank you, Mr. Chief Justice, and may it please the Court and Justice Breyer, I will say to you what you asked me to say, which is I believe if you get done listening to my colleagues on the other side, it will be quite clear that this is an inherently unworkable standard that they ask this complaint about under the statute. Sotomayor So why is it inherently unworkable here in any greater extent than it's unworkable in all of the other statutes where oral complaints are permitted? What makes this worse than those other statutes? What would create more cases in this area as opposed to some of the other areas where oral complaints are explicitly? Phillips I don't know that it's necessarily any worse in this particular context. I do think what it suggests is that the Congress that looked at this problem, which, as Justice Scalia pointed out, was the 1938 Congress, and what that Congress was saying is, you know, we are taking a very dramatic step. We are moving in the direction of Federal regulation of hours and wages. Sotomayor I'm sorry? Sotomayor This was the Lochner era where they weren't even sure they could do this. So, but why should we read their language with a narrow reading of any complaint? Phillips Well, I think you have to read their language as the way it was written and as they would have understood it at the time, which is to file any complaint, which, as it would have been understood in 1938 and, frankly, after that, when you file any complaint, that usually entails some notion of formality. And when you put it in the context of the specific provision where it's not only file any complaint, but institute any proceeding, cause any proceeding to be instituted, justify at a proceeding. Sotomayor Would a bringing of a grievance, the example that Justice Breyer suggested, a employee goes to his union and says they are violating the statute. Phillips Right. Sotomayor Let's grieve it. And according to the proceedings established by the employer, they meet with the employer and the employee does everything in the grievance and they now fire that employee. Under your reading, that's not instituting a proceeding? Phillips No, because a proceeding is understood and it's used consistently in the FLSA as an official action by a government agency. So, no, I don't believe that is instituting a proceeding. Sotomayor Then we have to address your second question, not the first. The oral would work in there. You're saying the oral wouldn't work in there. Phillips Right. Oral doesn't work in that particular context. Sotomayor But would it work if they instituted a proceeding orally and the proceeding required itself to be, to start orally? Phillips Well, I don't, I mean, the truth is if the employer envisions in its mind that it is instituting a proceeding, that's still not a proceeding within the meaning of what the FLSA had in mind in 1938. It had in mind an official action by a government agency and no, no private employer is ever going to institute a proceeding within the meaning of that particular scheme. You know, and it's extremely important in the context of this particular statute and the one thing I should have answered, Justice Sotomayor, to your question is what's different about this statute than any other? This statute carries a criminal penalty with it and no other retaliation statute except for one carries a criminal penalty.  But the reason it's been built in, Mr. Phillips, it says it's criminal liability only if it's willful. And on the civil side, the civil liability under the Fair Labor Standards Act, you certainly don't have to prove willful, you just prove a violation. Phillips Right. But the reality is, is that this Court held in the CIT case that the Court would not construe this statute broadly in order to expose people to potential criminal liability. Scalia Wouldn't any retaliatory action be willful? I mean, to say it's in retaliation means you're firing this person because of the complaint. Ginsburg The question is whether the violation is willful. The willful qualification in the criminal context is are you willfully denying your workers the wages and hours the statute requires? Phillips Right. Ginsburg Nothing to do with retaliation. Phillips No, I understand. Well, it does have something to do with retaliation. But, Justice Ginsburg, it seems to me it's all of a piece, though, because the reason why you can be comfortable with a willfulness standard, even because it extends to conscious disregard beyond the intent as well, but the reason why you can be comfortable with that is if you look at the way the statute is crafted in terms of the retaliation provision itself, it speaks specifically to formal actions that are taken, the filing of a complaint, the institution of a proceeding. Ginsburg Do we know how common is it to have criminal prosecutions under this section of the Fair Labor Standards Act? Phillips I don't believe there have been. I mean, it's not a null set, but I don't believe it's a particularly – I don't think it's a large number of proceedings. But it seems to me, though, in trying to understand what the Congress in 1938 would have done, and trying to understand why it would have approached this in a narrow way, and why this provision is aimed not generally to protect workers, but is aimed really to make sure that information gets to the Federal Government. Ginsburg I thought that the whole idea of this statute is to protect the workers, and I'd like you to address particularly the amici's point, that this statute in 1938, I mean, the affected people, many were illiterate. They couldn't write a complaint. Many were immigrants who weren't familiar with the language. For that universe of people, wouldn't Congress have meant that oral complaints are okay? Phillips Well, let me start by saying, first of all, even if the FLSA has broadly a pro-employee protective purpose, it's still important to recognize that the retaliation provision we're talking about here specifically did not provide a cause of action, a private cause of action, until 1977. So that when Congress enacted this statute in 1938, it didn't say boo about allowing the employees to show up in court and to assert their rights. So this is not part of that expansive grant rights to the employees portion of this legislation. And then second, Justice Ginsburg, with respect to the specifics of what did Congress have in mind, it seems to me the better way to evaluate this is not did Congress have in mind a group of illiterate employees or not, but what language did Congress use in trying to formulate the specific provision that gives rise to the protections against retaliation. Scalia, your case would be a lot easier if you didn't try to have it both ways, to say, number one, it only applies to filing a complaint with the government, and number two, you say, it also only applies to written complaints to the government. I mean, why don't you give a break to the illiterate and let them file oral complaints with the government? Well, my guess is that the truth is they will be able to file oral complaints with the government, because the only thing that's left open is the precise hypothetical you gave, Justice Scalia, where you make an oral complaint and nothing gets instituted under the – in those circumstances. And it seems to me clearly in the Federal government's authority to simply adopt a rule that says any time anybody makes an oral complaint to us, we will institute a proceeding. And if the agency adopted that view, I don't think there's anything we could say. Scalia, suppose it says we won't necessarily institute a proceeding, but we will regard it as a complaint. I mean, my own view is that the better way of reading – I mean, that's a much closer case. I will concede that, Justice Scalia. My own view is that when you're talking about file a complaint, that's just not the way Congress ordinarily thinks about file a complaint. That the use of file always has in mind written. I'm sorry. Justice Scalia's hypothetical, unless I'm misremembering, I think is very common in the – for example, the EEOC. People often file complaints and then the EEOC considers whether it's going to institute a proceeding or not. Right. And we're not – I'm not quarreling with that. I mean, I understand that. And the truth is, you know, I think for another day the issue will arise and the Court can decide whether or not a mere oral complaint to a government agency is sufficient to file a complaint within the meaning of the statute. But I do think it is fundamentally important for this Court to decide the underlying question of whether oral complaints are sufficient only in the context in the first instance of deciding whether or not it has to go to a government agency as opposed to any kind of private or intra-corporate activity. And I think that's the way it is. Ginsburg. How does it work with respect to the more recent statutes? Title VII, the Age Discrimination Act, Disabilities Act. And the other one is Title VII. In terms of retaliation, Justice Ginsburg? Yes. If you have not filed anything with the government, but you have, to your supervisor, imposed – opposed a practice. No, no. The vast majority of those statutes talk about any action opposing a practice, and therefore they deal with a lot of intra-corporate activities. And obviously at some point there is an issue as to sort of what the employer's intent is and how far it got up the ladder. But is it so in those cases, and I think you're quite right, intra-corporation complaints count as opposing any practice. Has there been any huge problems about people saying, oh, I made an oral complaint to my supervisor, and the supervisor said I never heard of it? Well, I suspect that issue comes up almost every day. And it is a problem, but it's a problem that Congress made a judgment that we would rather go ahead and allow those matters to be litigated in language that is very expansive in protecting employees from retaliation. And while I may chafe at that at times as a managing partner of a law firm, I recognize that that's the judgment Congress made. Here we're talking about a Congress that made a very different judgment about how it wanted to protect retaliation, and it was a judgment that was made, it seems to me, very much in the context of 1938. Justice Sotomayor, you're right. They weren't sure they even had constitutional authority to be adopting this approach, and they are attaching to it criminal sanctions, and they are not providing a private right of action. And in that context, it seems to me that this Court should comfortably say that this is a much narrower proposition. Breyer, what about Justice Ginsburg's question? I'm sorry? What about her question? In 1938, a lot of illiterate people couldn't have filed written complaints. And Congress must have recognized that fact. Well, if they did, isn't that reasonable to think that they would have included in filing in such circumstances oral filing? No, because under those circumstances, when you're going to impose criminal sanctions on somebody, you're going to say we're not going to do that. But your easier answer is yes, but only with the government. Well, I like that answer, too. Why isn't that an easier answer? I mean, I'm perfectly comfortable with that. But I have a problem with what you say, is that in front of us, do we have to decide that now, granted a different question, et cetera. You may not want to give up your first point. Well, I don't want to give up either of the points, actually. But the bottom line is, Justice Breyer, the question presented is very broad. I mean, the question of whether this goes to a governmental entity is fairly simple. Then it's odd that you say – I gather as well, for about 50 or 60 years, the relevant agencies have interpreted the statute the way that – to include oral complaints. And that seems to me a fairly strong reason for continuing to do so, where the language is so – allows it and there aren't strong reasons the other way. I don't know that there's 50 or 60 years of allowing oral complaints to be in the private context. There may be 50 to 60 years of allowing oral complaints being brought to the government agency, which I do think would go to Justice Scalia's point. But with respect to intra-corporate communications, there is no 60-year practice. Can we own any deference to the government's position on this point? I would not give any deference to the government's position, certainly not Chevron deference, because this is not a matter of— Well, Chevron deference would depend upon the intent. I guess you're getting into an argument here that there's no need to repeat in public. I mean, Justice Scalia and I don't necessarily agree on this. Why don't you think about it? Well, I mean, regardless of whether we do, why don't you think we have to give any deference? Well, I mean, I would— Or Chevron deference. Yeah, there's no Chevron deference, because this is not a matter that's been allocated to either the EEOC or the Secretary of Labor to administer and to adopt regulations. But, you know, how do we know? I mean, all right, if you want to get into it, this is a very minor sort of interstitial point in a statute that they administer, and there are lots of instances, I think, where the Court has said where these minor matters of how you work out the actual application of the word are implicitly delegated to the agency to determine within the context of reasonable views. But, Justice Breyer, that would strike me as a more persuasive argument if Congress hadn't delegated to the Secretary of Labor specific rulemaking authority with respect to specific provisions of the Fair Labor Standards Act and does not have a similar provision in connection with Section 215a. But not everything has to be done through formal rules. There are many, many ways of agencies determining facts. Right. Agency decisionmaking, but we don't have that either. All we have here are certain enforcement actions that are being brought by the agency, and indeed, if you look at the enforcement actions, they all ultimately tie to some kind of official action by some government entity. None of the actions that you can go back to and say, I'm going to defer to this, go into the circumstance we're talking about here where it's a purely private action as opposed to some kind of a public action. Sotomayor, So we should give it no weight at all? I would give it no weight at all. But even if you gave it weight, it's persuasive weight. It's persuasive weight as applied on the private side is nonexistent. You know, again, if the issue were before, if the issue were before. Breyer, Why would it be different if an agency works out a system of deciding when a person is really making a complaint as opposed to an offhand remark, and that is good enough to run the government of the United States, where they have they're in this business, why couldn't whatever their indicia are there also be transplanted to the private side? Well, it might be that to work out all right, but we don't have. In case you'd be left, if you're going to say it might work, then you're left with the simple argument that you don't think that this statute means to apply to complaints to an employer, written or oral. Well, I think the answer to that question is you don't have anywhere near the 50 years of practice dealing with the specific hypothetical you pose, Justice Breyer. If they were to adopt it now. Breyer, would you accept, do you think, is that a tenable interpretation? What this means is that written complaints are good enough to count as filings where you complain to your private employer, but written or oral count as a filing where you deal to, with the government agency. I mean, I don't think that's the most natural way to read this statute. And I think the right way to read this statute is to either say that an oral complaint is not sufficient, but if, I don't think you have to decide that issue. I think the better way to decide this case, and the more fundamental one, and it's the one Justice Scalia is coming back to, is does it apply beyond the government agency context? And if the answer to that is no. That isn't even brought up in the brief in opposition, right? It's in your brief on the merits. It wasn't brought up specifically in the brief in opposition. On the other hand, it was clearly presented and decided by the Seventh Circuit. So it was in the case as it came to this Court. And this Court's rule is that you can defend the judgment on any ground that's fairly presented. And this ground seems to me more than fairly presented, since it was on the ground itself. Is there anything in the legislative history of the statute that says it's limited to the government? Well, the — yeah, if you go back to the legislative history, there's a colloquy between the two senators, and I recognize some members of the Court are unenthusiastic. You know. But, you know, in that colloquy, they talk about malicious complaints, and it seems to me malicious in that context is talking about where you've essentially defamed your employer to a government agency. And that's what I'm trying to find. It could be. It could be that they're thinking of malicious complaints, and they're thinking of government agencies at the time, but neither their language nor their purpose, as history later shows, requires that limitation on scope. Well, I think if you're going back and trying to figure out what the Congress of 1938 had in mind, the best way to do that is to look at the language chosen and the company that that language keeps. And when you talk about filing a complaint and you file it, talk about instituting a proceeding or causing a proceeding to be instituted or testifying at a proceeding that's formal, or belonging to a company committee that is, again, a governmentally instituted methodology, the best way to read that is to say what they have in mind is an official government action of some sort. And it makes perfect sense. Ginsburg How would it relate to, say, an equal pay complaint, because equal pay is formally part of the Fair Labor Standards Act? But an equal pay complaint could also be brought as a Title VII suit. So a worker just complains about the denial of equal pay to the supervisor. Does that – is that a – I have no doubt that an employee under those circumstances, if discharged, would be able to make a claim under Title VII of retaliation for that particular conduct. Ginsburg And there's been – you said there was no, what, the government said 60 years, but there's been some 30 years or more experience under Title VII and other statutes with oral complaints to the employer as being sufficient to ground a retaliation claim. Gershengorn Right. And I think the key to this process, Justice Ginsburg, is what lens you're looking at. Are you looking through the cracked and yellowed glass that I'm looking through from 1938 or the glass as it looks through in 2010? And the truth is, if you were going to adopt this statute – Ginsburg But it starts in 1970s. Gershengorn I'm sorry? Ginsburg It starts in the 1970s. Gershengorn To be sure, Justice Ginsburg, but the – but this statute was enacted in 1938, and it was enacted as fairly radical and made an initial incursion into protecting people from retaliation. It doesn't purport to be as expansive as any of the subsequent – and if – and the truth is – can I make this point? Sotomayor How long have collective bargaining arbitration agreements been in existence? Gershengorn Since the Federal Arbitration Act. It actually probably predates the Federal Arbitration Act. Sotomayor How long is that? Gershengorn Oh, I mean, it would have been back around the same period of time in the 1930s. Sotomayor Do you think that when Congress wrote or caused to be instituted any proceeding under or related to this chapter, that they intended to exclude that proceeding and intended to exclude people who testified in that proceeding about a violation of the statute? Gershengorn Yes. I don't – I believe the proceeding is used in the Fair Labor Standards Act consistently throughout the statute to talk about government – official government actions and not simply private. Sotomayor Do you think that Congress did not do something in the Act that defines proceeding related – the words related – proceedings related to this chapter as limited only to government proceedings? Gershengorn Well, I mean, the – the only – in the brief we identified a number of places where Congress uses the word proceedings, and every place where they use the word proceedings, they have in mind an official government activity. And so I think it is the most logical way to read this particular language as incorporating that. Of course, you know, even if that were true, even if you were going to preserve that, that still wouldn't be a basis for going forward with this case, because there was no proceeding that was instituted pursuant to the informal actions that he took. Sotomayor Then we're back to whether Congress meant filing any complaint to be oral and right. I'm asking you a different question, which is that Congress's intent was not to protect a worker who publicly took an oath in front of an arbitrator and testified about a violation of law, that they would not have considered that retaliatory under the statute. I agree with that. Phillips I do not believe they would have regarded that as retaliatory under the statute because of the fact that the way this is all set up is to – and the way that it's just the narrowness of the Fair Labor Standards Act. And, Justice Ginsburg, to your question about the subsequent legislation that's developed and enacted, it seems to me in a lot of ways that reinforces the core interpretive approach that I've taken in this case, because if it were absolutely clear that the language about filing a complaint and instituting a proceeding were as broad as, certainly as the Petitioner proposes in this case, which any kind of oral grumbling is sufficient, Congress never would have needed to deviate from that template and all of the legislation that came afterwards. And there are tons of statutes that say, file a complaint, institute a proceeding, and otherwise oppose. And it would have been no reason for Congress to do that if this language would have accomplished precisely the same thing. Kennedy. It's more of a question for the Petitioner's counsel than you, but are you aware of any cases in the other jurisdictions where there have been proceedings, actions for retaliation, based on third – complaints to third parties, like a complaint to the press? Well, I'm sure there are such cases. I mean, I doubt that they – it probably wouldn't come up so much in the Fair Labor Standards Act process. I mean, that's the problem, is it's got a – this is a fairly narrow sweep to it, obviously. Waging hours, not a significant activity, but it doesn't tend to generate the same kind of intensity that you might expect out of Title VII or the Age Discrimination and Employment Act or some of the other provisions. If there are no further questions, Your Honors, I would ask the Court to affirm the judgment. Just one question. It seems to me, you're saying the only complaint that counts is the one to the government. Isn't in the work setting that's being regulated, wouldn't there be every reason to want the employee to complain first to the employer rather than making a Federal case out of it by complaining to a government agency? Intuitively, I don't disagree with that, Justice Ginsburg, but you have to go again. What was the purpose of this particular statute? And this statute was not intended as a protection to the employer or to the employee or to the employer. This is a provision that was designed to get information to the Federal government. And we know that because there's no private right of action to the employee that it is enforceable as a criminal sanction. And if you go back to the precursors of the Fair Labor Standards Act and somebody asked, is this the first one, I gather it's the third one, there was a Railway Labor Act, there was an NLRA, and then there was this particular provision. But if you go back to those precursors, you see that it's, again, a very narrow approach that's taken under those statutes as well. But what if you're an employee of the Treasury Department? You have an oral complaint to your superior. Is that filing a complaint with the government? I mean, part of it depends on whether the Fair Labor Standards Act applies to Federal employees. You know, there's a whole separate regime that deals with Federal employees. And I candidly, Mr. Chief Justice, I'm not a hundred percent sure whether this provision applies under those circumstances. Robertson, Thank you, Mr. Phillips. Phillips, Thank you, Your Honor. Roberts, Mr. Castor, you have 5 minutes. Castor, Thank you, Your Honor. We have two agencies here that have interpreted the statute this way. And it's not just enforcement actions, but we also have the EEOC manual. We also have other acts, the Surface Transportation Act. Scalia, excuse me. I don't understand how those agencies have any part in the administration of private lawsuits under this statute. The Department of Labor administers all of the. It administers lawsuits? No. I mean, it seems to me it's a matter for the courts. An agency interprets the statutes that direct the agency's own actions if it has to enforce things and so forth. But where there's a provision for a suit in court, it seems to me it's up to the courts to decide what it means. That may be true, Your Honor. We have the identical language in the Surface Transportation Act and OSHA, which the agency does have regulatory power over and has interpreted this precise language to include oral communications. In addition, the Migrant Workers Act, counsel wants to suggest that all of this is a throwback to 38. The Migrant Workers Act, which was adopted in 1982, has the very same language. It is implausible to suggest that Congress would think that a migrant worker was leaving the field and writing up a memo and bringing it back to his supervisor in order to assert his statutory rights. Scalia, what do you mean by the very same language? Just general?  Filed a complaint. That's the language of the migrant worker. And the remainder of it, institute a proceeding, be a member of a committee. I mean, he's relying in large part on the context of filing a complaint. Does this statute have those other provisions? It does not have those other provisions, Your Honor. Well, it's a big difference. Well, I respectfully disagree, Your Honor. I also suggest that what we're talking about in the very first case that this Court dealt with after the act was passed were coal miners. Nobody is taking — I don't think it would be plausible to suggest that Congress thought that coal miners, coal miners, factory workers, line workers, they don't write memos. With all due respect, Your Honor, lawyers write memos. People who this act was intended to cover, the poorest and the least educated people in the country. That's why under Mitchell v. DiMario and that's why under Tennessee Coal, the Court has taken the position that this deserves, has to have a broad interpretation, employees are the engine that actually enforces this act. Sotomayor, in Mitchell v. DiMario, the Court said, Sotomayor, in Mitchell v. DiMario, that that goes to your adversary's first argument or second argument, where he says when this act was passed for all of those people, they would never have thought of going to their employer because the work ethos at the time was that those employees couldn't complain to their employers. They would always naturally go to the government. How do you answer that? How do you disprove that point, that historically at the time this was passed in 1938, that there was a number of those employees who, as a regular course of their business, filed complaints with their employers as opposed to the government? Any complaints, Your Honor. Filed charges was the predatory — was the previous language in the National Labor Relations Act. Congress adopted a different phrase here. I'm sorry. The project. Filed any complaint. Filed any complaint. In Rosenwasser, this Court said that the criminal liability concerns of the employer were addressed by the word any. In other words, when they suggested under the act that there was criminal liability and they didn't know that piecework employees were covered, the Court responded in 1945, the word any resolves any kind of ambiguity the employer should have had. In this case, any means any and all, and that is without limitation. That is the kind of complaint that is protected under the act. On December 11, there's no question in this case Kevin Kastan asserted his statutory rights. This is a case about form over substance. Form over substance. That's what we're talking about. On December 11, 2006, Mr. Kastan was fired the same day they changed the time clocks and so that everybody else would get paid. Just as he complained they weren't properly legally being paid before that. They changed the clocks the same day if — now, there were a half a million complaints last year at the Department of Labor. If the Court should find that every complaint needs to go to the Department of Labor, then when I get a call from an employee, a disgruntled employee who says my paycheck was wrong or there's something wrong with my overtime or calculation, I'm going to say, you can't afford to call the Human Resources Department and have a conversation, a friendly conversation about this, because if you do and you happen to trigger a statutory assertion, that will be unprotected. You're going to foreclose all the internal communications that could occur. And — Roberts. Thank you, counsel. Thank you. The case is submitted. The Honorable Court is now adjourned until Monday next at 10 o'clock.